**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMIT PATEL,

               Plaintiff,

     v.

FAN DUEL, INC., FLUTTER
ENTERTAINMENT, PLC,
FOX CORPORATION, BOYD GAMING
CORP., XYZ CORPS. 1-10, JANE AND JOHN
DOES 1-10,

             Defendants.

CASE NUMBER: 1:24-CV-07402-VSB

**ORAL ARGUMENT REQUESTED**

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**FANDUEL, INC.'S AND FLUTTER ENTERTAINMENT PLC's**</u>
<u>**MOTION TO DISMISS THE COMPLAINT UNDER FEDERAL RULES OF CIVIL**</u>
<u>**PROCEDURE 12(b)(2) AND (12)(b)(6)**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

BACKGROUND ............................................................................................................ 1

ARGUMENT .................................................................................................................. 2

    I.    This Court Lacks Personal Jurisdiction over Flutter. .................................... 3

          A.    The Complaint Fails to Allege General Personal
               Jurisdiction over Flutter. ....................................................................... 4

          B.    Patel Fails to Allege Specific Personal Jurisdiction over
               Flutter. .................................................................................................... 6

    II.    The Complaint Fails to State any Claim Against Flutter or
          FanDuel. ........................................................................................................ 9

          A.    The Complaint Does Not Allege a Basis for the Claims
               Against Flutter. .................................................................................... 10

               1.    Patel fails to allege that Flutter itself took part in
                     any wrongdoing. .................................................................... 10

               2.    The Complaint does not allege a basis to pierce the
                     corporate veil. ...................................................................... 13

          B.    Florida's Wrongful-Conduct Rule Bars Claims Against
               Flutter and FanDuel. .......................................................................... 14

          C.    The Complaint Fails to State a Claim for IIED. ............................... 16

               1.    Patel does not adequately allege "outrageous
                       conduct." ................................................................................ 16

               2.    Patel does not adequately allege "severe"
                       emotional distress. ............................................................... 18

               3.    Patel does not adequately allege that Flutter or
                       FanDuel caused his emotional distress. ............................... 18

          D.    The Complaint Fails to State a Negligence Claim. ........................... 19

                1.    Patel fails to plead that Flutter or FanDuel owed
                       him a duty. ............................................................................ 20

                2.    Patel fails to adequately allege causation. ............................ 23

E.    The Complaint Fails to State a Claim under FDUTPA. ....................24

F.    The Complaint Fails to State a Claim for Civil
      Conspiracy. ........................................................................................25

CONCLUSION.....................................................................................................25

WORD COUNT CERTIFICATION ....................................................................27

CERTIFICATE OF SERVICE .............................................................................28

# TABLE OF AUTHORITIES

## CASES

*Al-Ahmed v. Twitter, Inc.*
553 F. Supp. 3d 118 (S.D.N.Y. 2021) ........................................................................ 6

*Antar v. Borgata Hotel Casino & Spa, LLC*
No. 22-CV-5785, 2024 WL 1672280 (D.N.J. Jan. 31, 2024) ............................ 22, 23

*Arasteh v. LuxUrban Hotels Inc.*
No. 24-CV-21990, 2024 WL 4370890 (S.D. Fla. Oct. 2, 2024) ............................ 16

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................ 9, 11, 12, 18

*Ashwood v. Patterson*
49 So. 2d 848 (Fla. 1951) ................................................................ 15

*Atuahene v. City of Hartford*
10 F. App'x 33 (2d Cir. 2001) ........................................................... 11

*Aviles v. S & P Glob., Inc.*
380 F. Supp. 3d 221 (S.D.N.Y. 2019) ....................................................... 6

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......................................................... 9, 11, 13, 25

*Berdeaux v. OneCoin Ltd.*
561 F. Supp. 3d 379 (S.D.N.Y. 2021) .................................................... 4, 7

*Bickel v. City of Coral Springs*
No. 17-CV-60606, 2017 WL 3336722 (S.D. Fla. Aug. 4, 2017) ........................... 18

*Blake Marine Grp. v. Frenkel & Co.*
439 F. Supp. 3d 249 (S.D.N.Y. 2020) ...................................................... 16

*Brown v. Lockheed Martin Corp.*
814 F.3d 619 (2d Cir. 2016) ................................................................ 6

*Calderon v. Sixt Rent a Car, LLC*
114 F. 4th 1190 (11th Cir. 2024) ...................................................... 24, 25

*Carriuolo v. Gen. Motors Co.*
823 F.3d 977 (11th Cir. 2016) ............................................................ 24

*Charles Schwab Corp. v. Bank of Am. Corp.*
883 F.3d 68 (2d Cir. 2018) ................................................................. 9

*Chen v. Dunkin' Brands, Inc.*
   954 F.3d 492 (2d Cir. 2020) ................................................................ 3

*Clay Elec. Co-op., Inc. v. Johnson*
   873 So. 2d 1182 (Fla. 2003) .......................................................... 20, 21

*Concord Assocs., L.P. v. Entm't Props. Tr.*
   No. 12-CV-1667, 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) ............... 11

*Cullum v. Wyndham Hotels & Resorts Corp.*
   No. 22-CV-9700, 2024 WL 552494 (S.D.N.Y. Feb. 12, 2024) ................ 8

*Daimler AG v. Bauman*
   571 U.S. 117 (2014) ....................................................................... 4, 5

*Discount Tire Co. v. Bradford*
   373 So. 3d 399 (Fla. Dist. Ct. App. 2023) ........................................... 21

*Edwardo v. Roman Catholic Bishop of Providence*
   66 F. 4th 69 (2d Cir. 2023) ................................................................ 7

*Elsevier, Inc. v. Grossman*
   77 F. Supp. 3d 331 (S.D.N.Y. 2015) ................................................... 6

*Estate of Duckett v. Cable News Network LLLP*
   No. 06-CV-444, 2008 WL 2959753 (M.D. Fla. July 31, 2008) .............. 17

*Fla. Dept. of Corrs. v. Abril*
   969 So. 2d 201 (Fla. 2007) .............................................................. 21

*Frias v. Demings*
   823 F. Supp. 2d 1279 (M.D. Fla. 2011) ............................................. 16

*Garcia v. Carnival Corp.*
   838 F. Supp. 2d 1334 (S.D. Fla. 2012) .......................................... 16, 17

*Gucci Am., Inc. v. Li*
   768 F.3d 122 (2d Cir. 2014) ........................................................... 4, 6

*Hakimoglu v. Trump Taj Mahal Assocs.*
   70 F.3d 291 (3d Cir. 1995) .............................................................. 23

*Hamlen v. Gateway Energy Servs. Corp.*
   No. 16-CV-3526, 2017 WL 6398729 (S.D.N.Y. Dec. 8, 2017) .............. 14

*Hennegan Co. v. Arriola*
   855 F. Supp. 2d 1354 (S.D. Fla. 2012) .............................................. 25

*Hollis v. Miami-Dade Cnty.*
No. 20-CV-21930, 2022 WL 4124300 (S.D. Fla. Aug. 10, 2022) ......................................... 18

*Honig v. Kornfeld*
339 F. Supp. 3d 1323 (S.D. Fla. 2018) .................................................................. 25

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ..................................................................... 4

*In re Amaranth Nat. Gas Commodities Litig.*
612 F. Supp. 2d 376 (S.D.N.Y. 2009) .................................................................... 14

*In re Del Valle Ruiz*
342 F. Supp. 3d 448 (S.D.N.Y. 2018) ...................................................................... 5

*In re Digital Music Antitrust Litig.*
812 F. Supp. 2d 390 (S.D.N.Y. 2011) .................................................................... 11

*In re Golden Meditech Holdings Ltd.*
No. 24-MISC-24, 2024 WL 1349135  (S.D.N.Y. Mar. 29, 2024) ................................... 5

*In re Jan. 2021 Short Squeeze Trading Litig.*
76 F. 4th 1335 (11th Cir. 2023) ...................................................................... 21, 22

*In re Platinum-Beechwood Litig.*
427 F. Supp. 3d 395 (S.D.N.Y. 2019) .................................................................... 11

*In re SSA Bonds Antitrust Litig.*
420 F. Supp. 3d 219 (S.D.N.Y. 2019) ...................................................................... 4

*In re Terrorist Attacks on Sept. 11, 2001*
714 F.3d 659 (2d Cir. 2013) ............................................................................ 3, 8

*Jacobson v. Pfizer, Inc.*
618 F. App'x 509 (11th Cir. 2015) .............................................................. 15, 16, 19

*Kaminer v. Eckerd Corp. of Fla., Inc.*
966 So. 2d 452 (Fla. Dist. Ct. App. 2007) ......................................................... 15, 16

*Kim v. Chang*
249 So. 3d 1300 (Fla. Dist. Ct. App. 2018) .............................................................. 18

*Liberty Mut. Ins. Co. v. Steadman*
968 So. 2d 592 (Fla. Dist. Ct. App. 2007) .............................................................. 17

*Marino v. Phaidon Int'l, Inc.*
2024 WL 4298164 (11th Cir. Sept. 26, 2024) ......................................................... 22

*McCain v. Fla. Power Corp.*
593 So. 2d 500 (Fla. 1992) .......................................................................... 19

*Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*
--- F. Supp. 3d ----, 2024 WL 3197606 (S.D.N.Y. June 27, 2024) ............................ 8

*Mohegan Lake Motors, Inc. v. Maoli*
559 F. Supp. 3d 323 (S.D.N.Y. 2021) .......................................................... 13

*Nims v. Harrison*
768 So. 2d 1198 (Fla. Dist. Ct. App. 2000) ................................................... 17

*OneWest Bank, N.A. v. Melina*
827 F.3d 214 (2d Cir. 2016) ........................................................................ 5

*Ortiz v. Consol. Edison Co. of N.Y., Inc.*
No. 22-CV-8957, 2024 WL 3086161 (S.D.N.Y. June 7, 2024) .............................. 13

*Ounjian v. Globoforce, Inc.*
89 F. 4th 852 (11th Cir. 2023) .................................................................... 24

*Perkins v. Benguent Consol. Mining Co.*
342 U.S. 437 (1952) .................................................................................. 5

*Philip Morris USA, Inc. v. Russo*
175 So. 3d 681 (Fla. 2015) ........................................................................ 25

*Plowright v. Miami Dade Cnty.*
102 F. 4th 1358 (11th Cir. 2024) .......................................................... 18, 24

*RBG Plastic v. Disabililty:IN*
No. 24-CV-21414, 2024 WL 4785338 (S.D. Fla. Nov. 14, 2024) .......................... 20

*Rolon v. Henneman*
517 F.3d 140 (2d Cir. 2008) ...................................................................... 10

*Saidnia v. Nimbus Mining LLC*
No. 21-CV-7792, 2023 WL 7005037 (S.D.N.Y. Oct. 24, 2023) ............................ 14

*Salahuddin v. Cuomo*
861 F.2d 40 (2d Cir. 1988) ........................................................................ 12

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*
366 F. Supp. 3d 516 (S.D.N.Y. 2018) .......................................................... 11

*Soter Techs., LLC v. IP Video Corp.*
523 F. Supp. 3d 389 (S.D.N.Y. 2021) ..................................................... 11, 13

*Stevens v. MTR Gaming Grp.*
    788 S.E.2d 59 (W. Va. 2016) ............................................................. 23

*Sunward Elecs., Inc. v. McDonald*
    362 F.3d 17 (2d Cir. 2004) ................................................................... 6

*Suzmar, LLC v. First Nat'l Bank of S. Miami*
    388 So. 3d 852 (Fla. Dist. Ct. App. 2023) ...................................... 20

*Taveras v. Resorts Int'l Hotel, Inc.*
    No. 07-CV-4555, 2008 WL 4372791 (D.N.J. Sept. 19, 2008) ......................................... 18, 23

*United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*
    285 F. Supp. 3d 759 (S.D.N.Y. 2018) ............................................. 14

*United States v. Bestfoods*
    524 U.S. 51 (1998) ............................................................................ 13

*Westmark Trade Servs., Inc. v. SGS N. Am., Inc.*
    No. 06-CV-21925 (S.D. Fla. May 9, 2007) ..................................... 21

*White v. Cuomo*
    38 N.Y.3d 209 (2022) ...................................................................... 23

*Wiand v. Wells Fargo Bank, N.A.*
    86 F. Supp. 3d 1316 (M.D. Fla. 2015) ............................................. 20

## STATUTES

28 U.S.C. § 1391(b)(2) ............................................................................. 8

31 U.S.C. § 5312(a)(2) ......................................................................... 20, 21

31 U.S.C. § 5312(a)(2)(R) ....................................................................... 21

31 U.S.C. § 5312(a)(2)(X)(i) .................................................................... 21

Fla. Stat. § 551.118 ................................................................................. 23

Fla. Stat. § 551.117 ................................................................................. 23

N.Y. C.P.L.R. § 302 .............................................................................. 6, 8

## REGULATIONS

31 C.F.R. § 1010.100(ff)(5)(ii)(F) ......................................................... 21

Between 2019 and 2023, Amit Patel stole more than $20 million from his employer and spent the money on a lavish lifestyle of private jet trips and country club memberships, as well as entry fees to compete in fantasy sports contests operated by FanDuel, Inc. After pleading guilty and being convicted of wire fraud, Patel filed this lawsuit seeking reimbursement from FanDuel, Flutter Entertainment PLC, and two other Defendants for the consequences of his unlawful conduct. Patel accepted responsibility for his crimes when he entered a guilty plea. Now in federal prison, he has conveniently reconsidered that admission and seeks to place the blame on FanDuel with a Complaint premised largely on the wild and unsubstantiated assertion that FanDuel or Flutter *knew* that Patel was stealing from his employer. Even setting that aside, the Complaint is shot through with unsupported conspiracy theories and legal errors. To start, the Complaint—which is barred by the basic rule that a person cannot bring a lawsuit based on his own illegal acts—does not properly allege a basis for this Court to exercise personal jurisdiction over Flutter. The Complaint never even identifies *any* factual basis for suing Flutter. Instead, Patel dreams up a paranoid plot against him based only on the allegation that Flutter has some unidentified ownership interest in FanDuel. What's more, all his claims under Florida law are legally unsound or inadequately alleged. The Court should therefore dismiss the claims against Flutter, and if the Court denies FanDuel's motion to compel arbitration, dismiss the claims against FanDuel as well.

## BACKGROUND

In 2019, Amit Patel started using money he embezzled from his employer, the Jacksonville Jaguars, to compete in Daily Fantasy Sports contests, among other things. *See* Compl. ¶¶ 4, 73, 92. As Patel describes it, Daily Fantasy Sports "is an online game where gamblers choose a team of real-life athletes and compete against other gamblers in a single day contest." *Id*. ¶ 80. Patel alleges FanDuel, Flutter, Fox Corporation, and Boyd Gaming Corporation ran these contests together. *See, e.g.*, *id*. ¶ 85. The Complaint almost exclusively refers to "the Defendants" as an

1

undifferentiated group, and Patel never explains what individual action Flutter, Fox, or Boyd took with respect to Daily Fantasy Sports. *See, e.g.*, *id*. ¶¶ 54, 79, 115.

Patel alleges that from 2019 to 2023, the "Defendants knew" he was a gambling addict yet "enticed" him to "continue to deposit and gamble." *Id*. ¶¶ 39, 136. The Defendants allegedly gave him "financial incentives, lavish trips, event tickets, and other gifts" and assigned him a VIP host who Patel says was responsible for maximizing the money he spent. *Id*. ¶¶ 9, 43, 133. Without ever alleging particular acts of misconduct by Flutter, Fox, or Boyd, Patel also claims that they allowed other players to collude against him and circumvented regulatory requirements and their own internal policies. *Id*. ¶¶ 79, 91.

Following Patel's federal conviction, he brought this diversity action for $250,000,000 in compensatory and punitive damages. *See id*. ¶¶ 3, 274. He claims the Defendants acted negligently, violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), conspired to breach their duty of care to him, and intentionally inflicted him with emotional distress (IIED). *Id*. ¶¶ 246–256, 257–261, 262–266, 267–274. On January 3, 2025, Patel voluntarily dismissed Fox and Boyd from the case. Dkt. 19, 20.

## ARGUMENT

Patel's Complaint is riddled with pleading errors and baseless accusations and should be dismissed. To start, the Court lacks personal jurisdiction over Flutter because Patel does not allege that Flutter is incorporated in New York, has its principal place of business in New York, or has *any* contacts with New York related to his claims. Rather, Patel's improper strategy in this case is to speculate—without citing any specific evidence—that Flutter plotted against him. Instead of alleging a single relevant fact about Flutter's misconduct or a single fact that would allow this Court to pierce its corporate veil, Patel *only* alleges that Flutter has an unidentified ownership stake in FanDuel and generates billions of dollars in gambling revenue from unknown sources. These

unfounded and frivolous charges should be dismissed for failure to state a claim.

In addition, all of Patel's farfetched claims against Flutter and FanDuel are barred under Florida's wrongful-conduct rule. That doctrine prevents a person like Patel from using the court system to profit off his crimes. And Patel's claims here seek compensation for injuries caused by his own embezzlement.

Each of Patel's state-law claims is also defective. For his IIED claim, his allegations of corporate misconduct fall far short of "outrageous" conduct "utterly intolerable in a civilized community," his allegations of "agony" and "severe emotional distress" are conclusory, and he does not plausibly show that Defendants caused his distress. His negligence claim fails because Flutter and FanDuel owed no duty to avoid enticing him to enter Daily Fantasy Sports contests, and regardless, he does not establish that they caused his losses. FDUTPA is not available because he alleges that every cent he lost was the Jaguars', not out of his own pocket. And without a well-pleaded tort or adequate allegations of an agreement among Defendants, his conspiracy claim should be dismissed as well.

## I. This Court Lacks Personal Jurisdiction over Flutter.

Patel's allegations are too vague and conclusory to establish general or specific personal jurisdiction over Flutter. To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Patel has the burden to "make a prima facie showing that jurisdiction exists" under New York law and the Due Process Clause of the Fourteenth Amendment. *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (citation omitted). Although the allegations in the complaint are taken as true and construed in the light most favorable to Patel, the Court does not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citation omitted). So, to meet his burden, Patel "must make allegations establishing

jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395 (S.D.N.Y. 2021) (citation omitted). And because jurisdiction must be established "separately over each defendant," "group pleading is not permitted," *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021), "even for affiliated corporate entities," *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 233 (S.D.N.Y. 2019). Here, the few allegations that pertain specifically to Flutter do not show that general jurisdiction would be consistent with federal due process or that specific jurisdiction is authorized under New York law.

### A. The Complaint Fails to Allege General Personal Jurisdiction over Flutter.

Patel's allegation that Flutter has a domestic headquarters in New York does not establish general personal jurisdiction under the Due Process Clause. General jurisdiction over a corporation is consistent with federal due process "only where [the corporation's] contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home'" in a state. *Gucci Am., Inc. v. Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). A corporation is ordinarily at home where it has its "formal place of incorporation or its principal place of business." *Id.* But Patel does not allege that Flutter is incorporated in New York or that New York is its principal place of business. To the contrary, he says that Flutter has "its headquarters located in . . . Ireland, and *domestic* headquarters located at 300 Park Avenue South in . . . New York." Compl. ¶ 21 (emphasis added). And because a corporation usually has just one "unique" principal place of business, Flutter's cannot be in both Ireland *and* New York. *Daimler*, 571 U.S. at 137. And Patel does pick a winner, portraying New York as the domestic branch for the main headquarters in Ireland. Alleging that Flutter has a principal international headquarters *and* a local headquarters in New York is thus insufficient to establish general jurisdiction in New York. *See In re Golden Meditech Holdings*

*Ltd.*, No. 24-MISC-24, 2024 WL 1349135, at *2 n.3 (S.D.N.Y. Mar. 29, 2024) (holding in context of extraterritorial discovery dispute that evidence of a "US headquarters" in New York or "head office in the United States" is inadequate for general jurisdiction). This is especially so because a corporation's headquarters is its principal place of business *only* if the headquarters is "the *actual* center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (emphasis added) (citation omitted). Patel does not assert that New York is Flutter's true "nerve center" or allege any facts necessary to make such a claim non-conclusory.

This is not a rare case where general jurisdiction can be found somewhere other than where a corporation is incorporated or has its principal place of business. In *Daimler AG v. Bauman*, the Supreme Court reserved the possibility that in some "exceptional case," a corporation's operations, viewed in the context of its "worldwide" activities, "may be so substantial and of such a nature as to render the corporation at home" even if the company is incorporated and has its principal place of business elsewhere. 571 U.S. at 139 n.19 & n.20. The only example in *Daimler* was a company that temporarily moved its principal place of business during wartime to the state where it was sued and set up "a surrogate for the place of incorporation or head office." *Id.* at 129 n.8, 139 n.19 (citation omitted) (discussing *Perkins v. Benguent Consol. Mining Co.*, 342 U.S. 437, 447–448 (1952)). Nothing like that is alleged here. Patel claims that Flutter keeps a "domestic headquarters" in New York separate from its headquarters in Ireland, not that Flutter temporarily moved all operations to New York. Courts in this District have declined to exercise general jurisdiction based on far more detailed allegations, including that a corporation managed its U.S. subsidiaries and $14.8 billion in assets in New York City and held executive meetings there, see *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 456 (S.D.N.Y. 2018) (extraterritorial discovery context),

and that a corporation had its "second largest corporate headquarters" in New York and kept over ten percent of its employees there, *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 125 (S.D.N.Y. 2021). Compared to *those* defective allegations about corporate activities, Patel does not even allege what Flutter does in New York aside from having an office on Park Avenue. Nor does he explain how Flutter's operations in New York fit into "the context of the company's overall activity" "nationwide and worldwide," as is required under *Daimler* to identify where a corporation is at home. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 628 (2d Cir. 2016) (emphasis and citation omitted). His conclusory allegation that Flutter has a "domestic headquarters" is therefore lacking any detail that could establish that Flutter's operations in New York are "so substantial and of such a nature" that it is at home here.

### B. Patel Fails to Allege Specific Personal Jurisdiction over Flutter.

The Complaint also does not establish specific jurisdiction over claims that arise out of Flutter's contacts with New York. *See Gucci*, 768 F.3d at 134. This Court's specific jurisdiction over Flutter reaches only as far as a state court could under New York's long-arm statute, C.P.L.R. § 302. *See Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 259 (S.D.N.Y. 2019). Patel does not specify which provisions of that statute support personal jurisdiction over any Defendant, but the Complaint is insufficient to invoke any relevant part of it.[1]

To begin, Patel has not alleged specific jurisdiction under Section 302(a)(1) of the long arm, which requires that the defendant "transact[] any business within the state" and that the plaintiff's claims arise from that transaction. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citation omitted). The only allegation that Flutter transacts business in New York

---

[1] Patel does not allege that he suffered an injury in New York, see C.P.L.R. § 302(a)(3), or that his causes of action arise out of ownership, use, or possession of New York realty, see *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (discussing Section 302(a)(4)).

is the presence of its "domestic headquarters" on Park Avenue.  But Patel has not alleged that any

of his claims arise from Flutter maintaining that office.  A claim "arises from" a transaction "when

there is some articulable nexus between the business transacted and the cause of action sued upon,

or when there is a substantial relationship between the transaction and the claim asserted."

*Edwardo v. Roman Catholic Bishop of Providence*, 66 F. 4th 69, 76 (2d Cir. 2023) (citation

omitted).  The Complaint does not articulate *any* relationship or nexus between Patel's claims that

"Defendants" enticed him to play Daily Fantasy Sports and Flutter's New York office.  Patel does

not allege a single detail about what happened at Flutter's office or the business Flutter might have

transacted there, if any.  For example, the Complaint is silent about whether Flutter took any action

at the New York office targeted at Patel or relating to Daily Fantasy Sports, or whether Flutter

even has any influence over Daily Fantasy Sports that it could potentially have exercised at its

"domestic headquarters."  Such a "merely coincidental" connection to New York is not enough to

show the kind of "direct relation between the cause of action and the in-state business conduct"

that Section 302(a)(1) requires.  *Id*. at 76 (alteration and citations omitted) ("[A] chain of causation

involving physical presence in New York does not, by itself, create a nexus between an otherwise

unrelated tort claim and a business transaction.")*.*

Patel's many allegations about conduct of the "Defendants" are not a valid basis to exercise

personal jurisdiction over Flutter, either.  This kind of "improper group pleading, in which [Patel]

refer[s] to actions taken by [Defendants] without distinguishing in the least among [them]," cannot

be used to make a prima facie case for personal jurisdiction.  *Berdeaux*, 561 F. Supp. 3d at 397.

Without identifying "specific connections between [Flutter] and New York and how [the] claims

arise out of those connections," Patel's "numerous references to actions taken by . . . unspecified

. . . 'Defendants'" should not be considered for purposes of personal jurisdiction.  *Cullum v.*

*Wyndham Hotels & Resorts Corp.*, No. 22-CV-9700, 2024 WL 552494, at *9 (S.D.N.Y. Feb. 12, 2024).

Regardless, Patel does not plausibly allege that *any* Defendants engaged in *any* conduct in New York, much less that his claims arise from business transacted in the state. None of Patel's allegations identify where the alleged misconduct occurred. At best, he makes a conclusory statement, in support of venue, that "a substantial part of the events and omissions giving rise to the claims occurred at the headquarters of Defendant FanDuel" in New York. Compl. ¶ 29. That allegation is copied from the venue statute, *see* 28 U.S.C. § 1391(b)(2), and is therefore a "legal conclusion couched as a factual allegation" that cannot serve as a basis for personal jurisdiction. *Sept. 11 Terrorist Attacks*, 714 F.3d at 673 (citation omitted). So even assuming that Patel's many allegations about unspecified "Defendants" could be understood as well-pled allegations about Flutter, he never alleges that the conduct giving rise to his claims has any connection to New York.

For similar reasons, Patel also fails to allege specific jurisdiction under Section 302(a)(2), which requires the defendant "in person or through an agent" "commit[] a tortious act within the state." C.P.L.R. § 302(a)(2). Patel does not allege that Flutter committed any torts while physically present in New York. *See Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, --- F. Supp. 3d ----, 2024 WL 3197606, at *4 (S.D.N.Y. June 27, 2024). He does not plausibly allege that Flutter specifically engaged in tortious conduct in New York or elsewhere or that *any* defendants took *any* tortious actions in New York. And his only specific allegation about Flutter's activities in New York—that it maintains a domestic headquarters there—is not an allegation of "a tortious act," C.P.L.R. § 302(a)(2). Moreover, Patel never alleges that any other person or entity acted as Flutter's agent or committed a tortious act in that capacity because he does not allege that anyone "acted in New York for the benefit of" Flutter, with its "knowledge and consent," "and under some

control by" it.  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (citation omitted).  Nor does he allege anyone did so in New York because, as explained above, his only allegation that anything relevant happened in New York is a legal conclusion pasted from the venue statute.

Finally, Patel cannot establish personal jurisdiction over Flutter on a conspiracy theory.  To do so, he would need to allege that "a conspiracy existed," that Flutter participated in it, and that "a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state."  *Id*. at 87.  Here, Patel's allegations that a conspiracy existed are limited to the legal conclusions, inadequate as a matter of law, that "[t]here was an agreement between two or more parties" and that "Defendants conspired" together by enticing him.  Compl. ¶¶ 269–273; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–557 (2007).  But even if that were enough to establish Flutter's participation in a conspiracy, as explained above, his allegations that any conduct occurred in New York are conclusory and based on impermissible group pleading.

## II.  The Complaint Fails to State any Claim Against Flutter or FanDuel.

Aside from that jurisdictional defect, the Complaint should also be dismissed under Rule 12(b)(6).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  To state a plausible claim, Patel cannot rely on "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'"  *Id*. (alteration and citation omitted).   While the Court accepts as true the

facts alleged and draws all inferences in Patel's favor, it is "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (Sotomayor, J.) (citation omitted). Here, Patel's claims against Flutter consist entirely of conclusory assertions, and for other reasons explained below, his claims against Flutter and FanDuel either have no legal basis or are inadequately pled.[2]

## A.  The Complaint Does Not Allege a Basis for the Claims Against Flutter.

The only two facts in the Complaint that specifically concern Flutter do not establish a sufficient connection to the alleged misconduct for Patel's claims to survive.

### 1.  Patel fails to allege that Flutter itself took part in any wrongdoing.

The Complaint does not state a plausible claim that Flutter engaged in any unlawful conduct. Nowhere does the Complaint allege that Flutter individually engaged in *any* conduct related to Patel, Daily Fantasy Sports, or any other Defendants. The only two paragraphs that pertain specifically to Flutter allege that it "owns, in whole or in part, several gambling companies including, but not limited to, FanDuel," and that Flutter "generated $11.7 [b]illion dollars in gambling revenue in 2023." Compl. ¶¶ 21–22. The Complaint is silent about whether Flutter participated in any decisions about Daily Fantasy Sports generally or Patel in particular—let alone what interest Flutter has in FanDuel, whether Flutter acquired that interest during the relevant period, what relationship might exist between Flutter and the other Defendants, or when any of those relationships began. The bare fact that Flutter had some as-yet unalleged stake in FanDuel does not come close to "nudg[ing] [Patel's] claims" that Flutter played some improper role in enticing Patel to enter Daily Fantasy Sports contests across "the line from conceivable to

---

[2] As FanDuel argues in its motion to compel arbitration, Patel and FanDuel entered valid contracts containing New York choice-of-law provisions and one-year limitations periods. Because those contracts are not before the Court for purposes of this Rule 12(b)(6) motion, FanDuel's position is that even if Florida law applies, the Complaint fails to state a claim.

plausible." *Iqbal*, 556 U.S. at 680 (citation omitted).

Patel's conclusory allegations that Flutter, FanDuel, Fox, and Boyd collectively engaged in misconduct also do not state a claim against Flutter because they fail to specify *any* factual basis for Flutter's liability. The Federal Rules require a complaint to provide "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration and citation omitted). A plaintiff may "collectively refer[] to multiple defendants where the complaint alerts defendants that identical claims are asserted against each." *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 412 (S.D.N.Y. 2021) (citation omitted). But it cannot "lump[] all the defendants together in each claim and provide[e] no factual basis to distinguish their conduct." *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 438 (S.D.N.Y. 2019) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)). As a result, courts often find a plaintiff cannot bring claims "against families of affiliated entities" by merely giving them the generic label "defendants," like Patel did here. *Concord Assocs., L.P. v. Entm't Props. Tr.*, No. 12-CV-1667, 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014); *see In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. 2011) (collecting cases); *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 559 (S.D.N.Y. 2018) (Broderick, J.) ("Group pleading, by which allegations are made against families of affiliated entities, is simply insufficient to withstand review on a motion to dismiss." (alteration and citation omitted)). That improper style of pleading is just how Patel proceeds against Flutter. Patel's allegations about Flutter are limited to its headquarters, public stock offering, net gambling revenues, and ownership "in whole or in part" of FanDuel. Compl. ¶¶ 21–22. The Complaint likewise alleges that Fox and Boyd are part owners of FanDuel. *See id*. ¶¶ 23–24. Nothing other than a "naked assertion" of financial interest in FanDuel connects Flutter to Patel, Fox and Boyd, or Daily Fantasy Sports.

*Iqbal*, 556 U.S. at 678 (citation omitted). Such a barebones allegation does not distinguish Flutter's alleged conduct from what the Complaint alleges about Fox and Boyd, or give adequate notice of the specific factual grounds for the specific claims against Flutter.

Worse still, the Complaint is confusing and ambiguous about what claims Patel is even bringing against Flutter and on what facts. The Complaint repeatedly refers at pivotal moments to "Defendants" with the singular pronoun "its," as though one unnamed Defendant (and not the others) were responsible for that conduct. For instance, Patel alleges that "[t]here was an agreement between two or more parties to circumvent *its* own Program . . . to ensure [Patel] [began] and continue[d] depositing money to gamble on *its* platform." Compl. ¶ 271 (emphases added). The Complaint never clarifies which if any of Flutter, FanDuel, Fox, and Boyd were among those "two or more parties," or which Defendants' policies they agreed to circumvent. A substantial part of the Complaint follows this pattern, alleging that Flutter, FanDuel, Fox, and Boyd collectively did something that, at the same time, only one of the Defendants is alleged to have done. *See, e.g.*, *id.* at 2 ("Part of Defendants' predatory gambling practice was intentionally ignoring its own responsible gaming protocol"); *id.* ¶ 9 (Patel "was designated by Defendants for its VIP status"); *id.* ¶ 66 ("Defendants told [Patel] through [the VIP host] that he would have to verify the source of funds being deposited with its site."); *id.* ¶¶ 15, 42, 63, 79, 84, 91, 251, 253, 254. At some point, Patel might have intended to identify the "it" Defendant as FanDuel, given his allegations that "a substantial part of the events and omissions giving rise to the claims occurred at the headquarters of [FanDuel]" and that FanDuel is one of the country's "largest providers of DFS." *Id.* ¶¶ 19, 29. But because he never says who "it" is, the "true substance" of his claims against Flutter is too "well disguised" to survive a motion to dismiss. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see Ortiz v. Consol. Edison Co. of N.Y., Inc.*, No. 22-CV-8957, 2024

WL 3086161, at *12 (S.D.N.Y. June 7, 2024), *report and recommendation adopted*, 2024 WL 3105686 (June 24, 2024).

Nor does the Complaint adequately allege a joint scheme among the Defendants. Although a "plaintiff need not explain the details of each defendant's role in the planning, funding, and execution" of a joint scheme, here, "there are no factual allegations that plausibly state that [Flutter was] involved in a scheme at all." *Soter*, 523 F. Supp. 3d at 412 (citation omitted). At most, Patel alleges that "[t]here was an agreement between two or more parties" to entice Patel and circumvent certain requirements, and that "Defendants conspired to breach their duty of care" by enticing him. Compl. ¶¶ 271, 274. These kinds of "conclusory allegation[s] of agreement at some unidentified point do[] not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557; *see Soter*, 523 F. Supp. 3d at 411–412 (concluding that more factually robust conspiracy allegations were insufficient).

2. The Complaint does not allege a basis to pierce the corporate veil.

Patel's allegation that Flutter owns FanDuel "in whole or in part" is also insufficient to disregard Flutter's corporate form and impose liability on it. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). Although in rare circumstances a court can pierce the "veil" separating parent and subsidiary, *id.* at 62, the Complaint is devoid of any allegations that would support doing so here.

Not even one of the facts needed to pierce the corporate veil is alleged in the Complaint. To pierce Flutter's veil, Patel must show "complete domination of the corporation" with respect to the transaction and "that such domination was used to commit a fraud or wrong against [Patel] which resulted in [his] injury." *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 338 (S.D.N.Y. 2021) (citation omitted). Patel alleges neither. At the outset, Patel fails to allege

"complete domination" of FanDuel by Flutter. Ten factors are relevant:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 384–385 (S.D.N.Y. 2009), *aff'd*, 730 F.3d 170 (2d Cir. 2013) (citation omitted). The Complaint says nothing about any of them. At most, Patel alleges that Flutter and FanDuel have offices in the same building. *See* Compl. ¶¶ 17, 21. Because the Complaint "is totally devoid of solid, nonconclusory allegations" about *any* facts that would allow Patel to establish complete domination, the motion to dismiss the claims against Flutter should be granted on that basis. *Saidnia v. Nimbus Mining LLC*, No. 21-CV-7792, 2023 WL 7005037, at *7 (S.D.N.Y. Oct. 24, 2023) (Broderick, J.); *see, e.g.*, *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 770 (S.D.N.Y. 2018). The Court could stop there, but the Complaint is deficient on the second prong, too. Patel has not alleged that Flutter "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [him]," because he does not allege a wrong separate from the tort that is the basis of his lawsuit, that his injuries "result[ed] from misuse of the corporate form itself," or even that Flutter has misused the corporate form to do anything at all. *Hamlen v. Gateway Energy Servs. Corp.*, No. 16-CV-3526, 2017 WL 6398729, at *10–*12 (S.D.N.Y. Dec. 8, 2017). Similarly defective veil-piercing claims are often dismissed in this District, and this Complaint should be no exception. *See, e.g.*, *id*. at *11 (collecting cases).

**B.    Florida's Wrongful-Conduct Rule Bars Claims Against Flutter and FanDuel.**

For a variety of other substantive reasons, Patel's claims against both Flutter and FanDuel

should be dismissed. First, Patel's attempt to obtain compensation from Flutter and FanDuel for the consequences of his own illegal acts is precluded by Florida's wrongful-conduct rule. That doctrine bars a plaintiff "from bringing a claim to recover for his injuries based on his own illegal conduct." *Jacobson v. Pfizer, Inc.*, 618 F. App'x 509, 511 (11th Cir. 2015) (per curiam); *see Ashwood v. Patterson*, 49 So. 2d 848, 850 (Fla. 1951) (en banc) (adopting the rule to avoid someone "tak[ing] advantage of his own wrong" or "profit[ing] by his own crime"). For example, in one Florida case, a man died after taking Oxycontin that had been stolen by a pharmacy technician from the corporate defendant. *Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So. 2d 452, 453 (Fla. Dist. Ct. App. 2007). The man's estate sued, claiming that the corporation had negligently failed to safeguard the drug. *Id.* Applying "the common law rule that a party cannot maintain an action based on the party's own illegal conduct," the court held that the man's "criminal conduct in ingesting the drug" barred recovery. *Id.* at 454–455. That rule controls this case, too.

Because Patel's claims are all based on his use of stolen funds to play Daily Fantasy Sports, they should be dismissed. The introduction to the Complaint frames his claims as based on the theory that Patel "gambled over $20 [m]illion dollars with the Defendants on daily fantasy sports . . . between late 2019 and early 2023," and that the Defendants allowed him to do so "knowing and/or taking intentional steps to avoid knowing that the money gambled by [him] was stolen or otherwise not from a legitimate source." Compl. at 1–2. That allegation is a central component of Patel's claims that Defendants enticed him to enter Daily Fantasy Sports contests. *See, e.g.*, *id.* ¶¶ 58, 79, 92–98. And the injuries that Patel seeks to remedy cannot be separated from the consequences of his illegal conduct. The "monies lost" were stolen, his embezzlement was a cause of his "emotional distress resulting from [his] addiction, anticipation of punishment, and imprisonment," and he asks for "repayment of stolen funds paid and owed." *Id.* ¶¶ 245, 274. The

core of the Complaint is thus that the Defendants induced Patel to steal money from the Jaguars and spend those illegal funds on Daily Fantasy Sports, and that he is owed compensation for the money he stole and the harms to him that followed. But that is precisely the kind of claim for "profit or compensation as a result of . . . illegal acts" that the wrongful-conduct rule bars. *Kaminer*, 966 So.2d at 454 (citation omitted); *see Jacobson*, 618 F. App'x at 511. And because it is not apparent this flaw could be fixed by repleading, the Complaint should be dismissed with prejudice. *See Blake Marine Grp. v. Frenkel & Co.*, 439 F. Supp. 3d 249, 255 (S.D.N.Y. 2020).

## C.    The Complaint Fails to State a Claim for IIED.

Even if the wrongful-conduct rule does not bar Patel's claims, he does not state a claim for IIED. To prove IIED in Florida, a plaintiff is required to show that the defendant's "conduct was outrageous," that "the conduct caused emotional distress," and that "the emotional distress was severe." *Frias v. Demings*, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011). Patel's allegations are inadequate to establish any of those elements.

### 1.    Patel does not adequately allege "outrageous conduct."

First, Patel's theory that the Defendants enticed him to play Daily Fantasy Sports even though they knew he was addicted to gambling does not rise to "outrageous" conduct under Florida law. In Florida, whether a defendant's acts are "outrageous" enough to state an IIED claim is a question of law. *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012). Under Florida's "extremely high" standard, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted). Merely "reprehensible" conduct is "insufficient." *Arasteh v. LuxUrban Hotels Inc.*, No. 24-CV-21990, 2024 WL 4370890, at *6 (S.D. Fla. Oct. 2, 2024) (citation omitted). Accepting Patel's allegations as true, much of what he describes is simply a more aggressive form of commonplace incentives that entertainment

companies use to build relationships with their customers, including gifts, bonuses, refunds, and personalized communications—not conduct that is "atrocious" and "beyond all possible bounds of decency." *Garcia*, 838 F. Supp. 2d at 1339. And though Patel asserts it is reprehensible to run unfair fantasy sports contests or to "circumvent" policies that guard against the improper use of them, as Patel alleges, it can hardly be said that such mine-run corporate conduct is "utterly intolerable in a civilized community," *Id*.; *see, e.g.*, *Nims v. Harrison*, 768 So. 2d 1198, 1201 (Fla. Dist. Ct. App. 2000) ("outrageous" for defendant to distribute newsletter threatening to kill plaintiff and rape her children). Courts applying Florida law have found far more shocking conduct to fall short. *See, e.g.*, *Garcia*, 838 F. Supp. 2d at 1336, 1339 (not "outrageous" for cruise ship employees to batter and handcuff passenger, drag her across the floor, confine her to cabin, and destroy camera used to record the incident).

It makes no difference that Defendants allegedly knew about Patel's gambling addiction. In Florida, "knowledge of a person's particular susceptibility to emotional distress is relevant" in assessing the outrageousness of the conduct. *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. Dist. Ct. App. 2007). But Patel does not allege that he was particularly susceptible to emotional distress or that the Defendants knew he was. Nor is it reasonable to infer from the Complaint that his addiction to gambling would necessarily have made him more susceptible to emotional distress than any other person entering Daily Fantasy Sports contests, or that Defendants knew as much. Patel alleges nothing like the obvious distress of a patient waiting for a double lung transplant with little time left, see *id*. at 596, or a mother dealing with the disappearance of her son, see *Estate of Duckett v. Cable News Network LLLP*, No. 06-CV-444, 2008 WL 2959753, at *5 (M.D. Fla. July 31, 2008). And in any event, as explained further below, see Section II.D.1, in allegedly "encouraging" Patel "to continue gambling," "Defendants acted well within the

bounds of the community norms reflected in state law," even if their alleged conduct was directed toward an addicted gambler. *Taveras v. Resorts Int'l Hotel, Inc.*, No. 07-CV-4555, 2008 WL 4372791, at *6 (D.N.J. Sept. 19, 2008) (dismissing similar IIED claim brought by addicted gambler).

2.     Patel does not adequately allege "severe" emotional distress.

Patel also fails to plead that his emotional distress was "severe." Florida law requires that "severe emotional distress" be "of such a substantial quality or enduring quality[] that no reasonable person in a civilized society should be expected to endure it." *Kim v. Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018) (citation omitted). All Patel asserts is that he suffered "severe emotional distress resulting from [his] addiction, anticipation of punishment, and imprisonment," and that his "addiction caused him constant agony in the years between 2019 and 2023." Compl. ¶¶ 56, 245, 274; *see id.* ¶¶ 265–266. "Severe emotional distress" is a "[t]hreadbare recital[]" of one element of the claim, and "agony"—a mere synonym for "severe emotional distress"—is a "conclusory statement" in support of it. *Iqbal*, 556 U.S. at 678; *see, e.g., Hollis v. Miami-Dade Cnty.*, No. 20-CV-21930, 2022 WL 4124300, at *7 (S.D. Fla. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 4119753 (Sept. 9, 2022) (rejecting as insufficient allegations of "mental anguish"); *cf. Plowright v. Miami Dade Cnty.*, 102 F. 4th 1358, 1369 (11th Cir. 2024) (allegations of "psychological trauma" and "depression" were enough given execution of plaintiff's dog for no reason); *Bickel v. City of Coral Springs*, No. 17-CV-60606, 2017 WL 3336722, at *3 (S.D. Fla. Aug. 4, 2017) (alleging "nightmares, paranoia, and extreme anxiety").

3.     Patel does not adequately allege that Flutter or FanDuel caused his emotional distress.

Finally, Patel fails to allege causation. Although he asserts that his "addiction caused him constant agony," Compl. ¶ 56, and that the Defendants "create[ed], nurtur[ed], expedit[ed], and/or

exacerbate[ed]" his addiction, see, *e.g.*, *id.* ¶ 245, those allegations are implausible. For starters, Patel cannot plausibly allege that the Defendants "created" his addiction because he also alleges that he had an addiction before the Defendants are alleged to have engaged in any misconduct. Specifically, he claims that he was addicted to gambling "[a]t all times relevant to this Complaint"—including the moment he started using stolen money to enter the contests. *Id.* ¶¶ 31, 92. Patel does not allege any facts about how the Defendants might have "created" his addiction before that point. And he never plausibly alleges that the Defendants made the distress he was already experiencing from his preexisting addiction any worse. Rather, he asserts that he was in "*constant* agony" from his addiction—an addiction that could only, on Patel's own allegations, have plausibly developed separate from and prior to the misconduct alleged in the Complaint.

The Complaint also provides no adequate factual support for the claim that Defendants' conduct proximately caused Patel "severe emotional distress from . . . anticipation of punishment, and imprisonment." *Id.* ¶ 245. In Florida, a defendant's conduct is not the proximate cause of an injury as a matter of law if "the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992). Here, the only reasonable inference is that Patel's independent conduct caused his incarceration. No one forced Patel to embezzle. His conviction was accordingly caused only by his own voluntary decision to steal. *Cf. Jacobson*, 618 F. App'x at 511–512. Besides, because Patel does not adequately allege that Defendants caused his addiction, or that in the absence of Defendants' conduct he would have refrained from stealing, it is impossible to reasonably infer that Defendants' conduct "substantially caused" his injury. *McCain*, 593 So. 2d at 502.

### D. The Complaint Fails to State a Negligence Claim.

Patel's negligence claim should also be dismissed because he does not allege that Flutter or FanDuel owed him a duty of care or caused his injuries.

1. Patel fails to plead that Flutter or FanDuel owed him a duty.

Patel fails to plausibly plead that Flutter or FanDuel owed a duty to not entice him to enter fantasy sports contests. To bring a claim for negligence under Florida law, a plaintiff is required to show "[a] duty" that requires the defendant "to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (citation omitted). In Florida, a duty "may arise from four general sources," "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Id.* (citation omitted). Patel has not alleged a duty from any of those sources.

Patel does not adequately invoke any statutes or regulations that give rise to a duty owed to him. At most, the Complaint alleges that Defendants "are a 'financial institution' as that term is defined by the federal Bank Secrecy Act (BSA)," and as a result, that "Defendants are required to comply with federal Know Your Customer (KYC), anti-money laundering (AML), and customer due-diligence (CDD) guidelines and rules." Compl. ¶¶ 60, 62. Under Florida law, BSA requirements "do not create a duty" because "consumers do not have a private right of action to enforce these rules." *Suzmar, LLC v. First Nat'l Bank of S. Miami*, 388 So. 3d 852, 855 (Fla. Dist. Ct. App. 2023) (discussing KYC); *see Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1322 (M.D. Fla. 2015), *aff'd sub nom.*, 677 Fed. Appx. 573 (11th Cir. 2017). Regardless, nothing in the BSA requires Daily Fantasy Sports contests to comply with KYC, AML, and CDD rules. *See* 31 U.S.C. § 5312(a)(2) (defining the "financial institution[s]" governed by the BSA). And it is irrelevant that Defendants allegedly adopted a program implementing those requirements, because in Florida, a private company's internal policies do not independently create a legal duty where one did not already exist. *See RBG Plastic v. Disabililty:IN*, No. 24-CV-21414, 2024 WL 4785338, at *10 (S.D. Fla. Nov. 14, 2024); *Discount Tire Co. v. Bradford*, 373 So. 3d 399, 401,

20

403–404 (Fla. Dist. Ct. App. 2023).

Even if the BSA could create a duty under Florida law, which it doesn't, and even if the BSA applied to Daily Fantasy Sports, which it doesn't, Patel's allegation is implausible that the Defendants formed a single "financial institution" within the meaning of the statute. *See* 31 U.S.C. § 5312(a)(2). It makes little sense that the Defendants, whose relationship is never described except for some unspecified ownership interests in FanDuel, could collectively form an integrated "financial institution," as Patel alleges. *See* Compl. ¶ 60. Nor does Patel ever allege a factual basis for treating Defendants as such. *See, e.g.*, 31 U.S.C. § 5312(a)(2)(X)(i) (licensed gaming establishments); *id*. § 5312(a)(2)(R) (money transmitters); 31 C.F.R. § 1010.100(ff)(5)(ii)(F) (excluding money transfers "integral to the . . . provision of services").

No judicial authority imposes a duty here. In Florida, the doctrine that "whenever someone 'undertakes' to perform a service, she has a duty to perform that service carefully" "is limited to *physical* harms, not economic ones." *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F. 4th 1335, 1353 (11th Cir. 2023); *cf. Westmark Trade Servs., Inc. v. SGS N. Am., Inc.*, No. 06-CV-21925, 2007 WL 9701024, at *3 n.2 (S.D. Fla. May 9, 2007) (collecting inapposite Florida cases to the contrary). Because Patel did not suffer any physical harm, that precedent does not apply.

Finally, Patel fails to allege a duty from "the general facts of the case." *Clay Elec.*, 873 So. 2d at 1185 (citation omitted). Under that principle, if "an activity foreseeably placed another person in the 'zone of risk,' then there is a tort law duty to exercise reasonable care to avoid foreseeable harm from the risk." *Short Squeeze*, 76 F. 4th at 1353. But Florida law generally "limits the zone-of-risk doctrine to *non-economic* injuries." *Id*. at 1354 (emphasis added). Here, Patel cannot recover for emotional distress on a negligence theory, see *Fla. Dept. of Corrs. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007), and he "[does] not allege that *any* real or personal property was

damaged," *Short Squeeze*, 76 F. 4th at 1354 (citation omitted).  His negligence damages are thus limited to his economic losses from, in his own words, "monies lost," "repayment of stolen funds," and "the complete devastation of [his] professional, personal, and financial life."  Compl. ¶ 245.

Flutter or FanDuel had no duty under Florida law to protect Patel from paying Daily Fantasy Sports entry fees.  Just as a securities trading platform that "courted novice investors and knew of the risks inherent" in its business model has no "duty to avoid causing economic loss to those customers," Florida courts would not stretch "zone-of-risk negligence duty to facts like" Patel's "with no connection to the negligent damage of physical property."  *Short Squeeze*, 76 F. 4th at 1353–1354; *cf. Marino v. Phaidon Int'l, Inc.*, 2024 WL 4298164, at *2–*3 (11th Cir. Sept. 26, 2024) (absent extraordinary circumstances or a special relationship, Florida does not recognize a tort claim based on economic harm).  Expanding duty under Florida law in that way "would dramatically disrupt day-to-day economic activity" because "[o]ne person's pursuit of economic opportunity is often another's foreseeable economic loss."  *Short Squeeze*, 76 F. 4th at 1354.

Even if Patel's allegations were true that he is a gambling addict and was enticed to enter fantasy sports contests, no court has ever recognized a duty to avoid enticing addicted gamblers, if that is what Patel asks this Court to adopt.  Addicted gamblers have repeatedly argued that casinos owed them a duty to not entice them to gamble or to stop them from gambling, and courts have universally disagreed.  For example, like Patel, the plaintiff in *Antar v. Borgata Hotel Casino & Spa, LLC*, recently argued that casinos enticed him with a "VIP Account Manager" who offered "numerous gambling promotions, incentives, and bonuses meant to encourage further gambling." No. 22-CV-5785, 2024 WL 1672280, at *1 (D.N.J. Jan. 31, 2024), *appeal filed*, No. 24-1364 (3d Cir.).  The court followed numerous precedents refusing to adopt similar duties because state law "pervasively regulate[d] the responsibilities of casinos as they relate to compulsive gamblers" yet

was "notably silent on whether casinos or online gambling platforms may induce people who present with compulsive gambling behavior to patronize their business." *Id*. at *4; *see, e.g.*, *Taveras*, 2008 WL 4372791, at *4; *Stevens v. MTR Gaming Grp.*, 788 S.E.2d 59, 63–66 (W. Va. 2016). Florida statutes similarly regulate certain gambling operators but do not impose an express duty to avoid enticing addicted gamblers. Slot machine licensees in Florida are required to "offer training to employees on responsible gaming," to "work with a compulsive or addictive gambling prevention program to recognize problem gaming situations and to implement responsible gaming programs and practices," and to help fund the prevention program. Fla. Stat. § 551.118. Whatever duties that statute creates, they are owed to the state, not gamblers, see *id*. § 551.117, and they do not say a licensee must refrain from enticing addicted gamblers or fantasy sports contestants.

2.    Patel fails to adequately allege causation.

The Complaint also fails to plausibly allege that enticements to enter fantasy sports contests caused Patel's losses. Determining why a gambler loses presents "almost metaphysical problems of proximate causation." *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 294 (3d Cir. 1995) (citation omitted) (Alito, J.). A person who is not addicted to gambling "can play well yet lose big" and an addicted gambler "can still win big," so either way, eventually "the house will win and the gamblers will lose." *Id*. (citation omitted). Indeed, Patel's causation allegations fair even worse than those in *Hakimoglu*. Because Daily Fantasy Sports is a game of skill in which Patel was playing against opponents and not the house, his losses would have *also* been caused by the relative skills of his opponents. *See, e.g.*, *White v. Cuomo*, 38 N.Y.3d 209, 223–224 (2022). Given that economic reality, Patel does not allege facts that would untangle his losing streak from bad luck or his opponents' skill and permit the inference that Defendants substantially caused his losses. *Cf.* Compl. ¶¶ 86–91 (alleging that Defendants allowed collusion in Patel's contests but not that Patel lost as a result).

In sum, if Patel's theory were sound, any player alleging an addiction could sue any casino or online gambling platform claiming that the company was responsible for her losses and illegal acts. But gaming operators are not insurers who reimburse gamblers who lose the pot—or people who steal to play—and Florida negligence law does not require them to do so.

E.     The Complaint Fails to State a Claim under FDUTPA.

Next, Patel fails to plead an FDUTPA claim because he does not allege that Defendants caused him to personally suffer actual damages. In addition to an "a deceptive act or unfair practice," a plaintiff suing for FDUTPA damages must establish "causation," and "actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). "[A]ctual damages" under FDUTPA are limited to "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Calderon v. Sixt Rent a Car, LLC*, 114 F. 4th 1190, 1209 (11th Cir. 2024) (citation omitted). Nominal damages, speculative loss, and consequential damages are not available. *See id.*; *Ounjian v. Globoforce, Inc.*, 89 F. 4th 852, 861 (11th Cir. 2023). A claim under FDUTPA therefore "fails unless the plaintiff suffered 'out-of-pocket damages.'" *Calderon*, 114 F. 4th at 1209 (citation omitted).

None of Patel's alleged actual damages were paid out of his own pocket, and so his FDUTPA claim should be dismissed. The only actual damages Patel arguably alleges are entry fees he paid with money stolen from the Jaguars. But a plaintiff "cannot show that [he has] suffered any actual damages" under FDUTPA if he did not pay "out of [his] own pocket." *Id.* at 1210. For example, the Eleventh Circuit recently held that plaintiffs failed to establish actual damages for rental car repair costs where an insurer or an employer paid to fix the cars, or where the plaintiff "expensed the remaining balance to his business, which is a separate legal entity." *Id.* The court reasoned that "when third parties—such as insurers or employers—make the payment

for a consumer, it is only the third party that has suffered the damages." *Id*. at 1211. Similarly, Patel allegedly spent none of his own money on Daily Fantasy Sports. Every dime of the "more than $20,000,000 deposited" was "stolen money." Compl. ¶ 93; *see id*. ¶¶ 92-97; *id*. at 1–2. Only the third party from which Patel stole the money "suffered the damages" because all the money lost came out of that party's pockets. Just as if Patel had improperly expensed the entry fees, his employer is the one who really made the payment. Patel has no entitlement under FDUTPA to recoup money never lawfully in his possession, and this claim should be dismissed.

Even assuming Patel did somehow suffer an out-of-pocket injury, he does not plausibly plead causation. For the reasons given above, see Section II.D.2, Patel does not adequately allege that the chain linking the alleged misconduct and his actual losses is "direct, rather than remote or speculative," and the claim should be dismissed on this ground as well. *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).

## F.     The Complaint Fails to State a Claim for Civil Conspiracy.

Finally, Patel's conspiracy claim fails. In Florida, "[a]n actionable conspiracy requires an actionable underlying tort or wrong." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) (citation omitted). Because Patel's underlying torts are inadequately pleaded, his conspiracy claim should be dismissed. Regardless, as explained above, Patel fails to adequately allege that a conspiracy existed. *See* Section II.A.1. A civil conspiracy requires "an agreement between two or more parties . . . to do an unlawful act or to do a lawful act by unlawful means." *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015). But Patel's allegations of "parallel conduct and a bare assertion of conspiracy" do not suffice. *Twombly*, 550 U.S. at 556.

## CONCLUSION

For those reasons, the claims again Flutter and FanDuel should be dismissed.

Dated: January 17, 2025       SUSMAN GODFREY L.L.P.

By: */s/ Vineet Bhatia*
Vineet Bhatia (2419273)
vbhatia@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Jason Bell (*pro hac vice*)
jbell@susmangodfrey.com
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

*Attorneys for FanDuel and Flutter Entertainment*

## WORD COUNT CERTIFICATION

Pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, certificate of service, and word count certification is 8,746.

/s/ *Vineet Bhatia*
Vineet Bhatia

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Vineet Bhatia*
Vineet Bhatia